**STATE OF WEST VIRGINIA**

*In re* A.G.-1

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 18-0583 (Webster County17-JA-113)

# MEMORANDUM DECISION

Petitioner Father A.G.-2, by counsel Andrew Chattin, appeals the Circuit Court of Webster County's May 31, 2018, order terminating his parental rights to A.G.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Sneed, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without granting him an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2017, the DHHR filed a petition alleging that petitioner was arrested for possession with intent to deliver after police officers found methamphetamine, needles, baggies, and scales in his home. The DHHR alleged that two of the baggies of methamphetamine were in an area accessible to K.I.[2] Petitioner admitted to using "speed" while the mother and K.I. were in the home. The DHHR further alleged that the mother was pregnant with A.G.-1 at the time and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, as the child and petitioner share the same initials, we refer to them as A.G.-1 and A.G.-2, respectively.

[2]Petitioner is not the biological father of K.I. and, thus, that child is not at issue in this appeal.

that petitioner was the child's father.[3] Additionally, the DHHR alleged that petitioner was previously convicted of operating a clandestine drug lab. Petitioner was on post-conviction bond with terms to remain drug free at the time he was arrested in December of 2017. Finally, the DHHR alleged that the home was unsuitable for children with multiple safety hazards noted.

The circuit court held an adjudicatory hearing in March of 2018. The evidence showed that petitioner used controlled substances while at least one child was in his care, custody and control and that petitioner had twist ties, baggies, scales, drug paraphernalia and methamphetamine in the home where the mother and at least one of the children were living. The circuit court adjudicated petitioner as an abusing parent.

In April of 2018, the circuit court held a dispositional hearing and heard testimony from petitioner and a DHHR worker. Petitioner testified that he was serving an indeterminate two to ten year sentence of incarceration related to a felony conviction for operating a clandestine drug lab, but that the possession with intent to deliver charge, which was alleged in the petition, had not been presented to a grand jury. Petitioner admitted that he used controlled substances since he was a teenager, but never sought treatment in regard to his substance abuse. Petitioner explained that he was currently housed at a regional jail, awaiting transfer to a state penitentiary, and participating in a recovery program. However, according to petitioner, there were no other programs, such as parenting classes, available to him until he could be moved to a prison. The DHHR worker testified that the DHHR recommended termination of petitioner's rights based on his long his drug history, his incarceration, and his lack of a bond with the child.

Ultimately, the circuit court terminated petitioner's parental rights. In doing so, the circuit court noted petitioner's significant criminal and substance abuse history. Further, the circuit court found that petitioner had been incarcerated for A.G.-1's entire life as a result of his failure to remain drug free and his violation of the terms of his post-conviction bond. Finally, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the foreseeable future. The circuit court memorialized its decision in its May 31, 2018, order. Petitioner now appeals that order.[4]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a

---

[3]When A.G.-1 was born in February of 2018, the pleadings were amended to include A.G.-1.

[4]The biological mother is currently participating in an improvement period. According to the parties, the child was placed with a relative and his permanency plan is either reunification with his mother or adoption in his current relative foster placement.

reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T*., 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him an improvement period. According to petitioner, he should have been granted an improvement period in order to demonstrate his ability to correct the conditions which led to the petitioner's filing. We find no error. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period. . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

The circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period because petitioner did not demonstrate that he was likely to fully participate in such an improvement period. It is clear from the record that petitioner violated the circuit court's order to remain drug free in his criminal case which, ultimately, led to his incarceration. Petitioner's substance abuse was so pervasive that he continued to use controlled substances despite serious consequences. Further, as a result of his incarceration, petitioner did not have access to many of the services required to remedy the conditions of abuse and neglect during an improvement period. Although petitioner testified that he could participate in parenting classes while in a prison facility, he did not know when he would be transferred from the regional jail and have access to those services. Therefore, we find that the circuit court did not err in denying petitioner's motion for an improvement period because petitioner did not demonstrate that he would fully participate in an improvement period.

Further, the record supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. Additionally, West Virginia Code § 49-4-604(c)(1) provides that no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected exist when the "abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or

drugs, to the extent that proper parenting skills have been seriously impaired and the person . . . [has] not responded to or followed through the recommended and appropriate treatment."

Petitioner's substance abuse seriously impaired his ability to parent and he was unable to follow through with appropriate treatment. As noted in the petition, petitioner left methamphetamine in reach of the minor child in his home. Additionally, petitioner's continued substance use led to his incarceration. Petitioner never met or assisted in the parenting of A.G.-1 because he violated a circuit court's order not to abuse controlled substances. The record clearly supports that petitioner's substance abuse seriously impaired his parenting skills. Further, petitioner's incarceration prevents him from participating in any meaningful treatment. Although petitioner argues on appeal that he could remedy the conditions of abuse and neglect, the record does not support that assertion. Petitioner admitted to substance abuse and addiction since he was a teenager and did not indicate that he ever maintained sobriety during that time.

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4 (2011). A.G.-1 is a very young child who has had no contact with petitioner since her birth. Moreover, petitioner will not be available as a parent until August of 2020 at the earliest. Accordingly, we find the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the welfare of the child are supported by the record.

Finally, this Court has previously held

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). The circuit court made the proper findings to support termination of parental rights, and we find no error in those findings. Accordingly, petitioner is entitled to no relief.

Lastly, because the proceedings in circuit court regarding the mother are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 31, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

5